**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

**JUDGE KAREN B. OWENS**                                                **824 N. MARKET STREET**
                                                                         **WILMINGTON, DELAWARE**
                                                                         **(302) 533-3183**

October 31, 2022

<u>**VIA CM-ECF**</u>

| | |
|---|---|
| David W. Carickhoff, Esq. | Mary F. Caloway, Esq. |
| Bryan J. Hall, Esq. | Andrew W. Caine, Esq. |
| Archer & Greiner P.C. | Pachulski Stang Ziehl & Jones, LLP |
| 300 Delaware Ave., Suite 1100 | 919 N. Market Street, 17th Floor |
| Wilmington DE, 19801 | Wilmington DE, 19899 |

        In re:   Diversified Mercury Communications, LLC – Case No. 19-10757 (KBO)
               George L. Miller, Chapter 7 Trustee, v. Direct Results Radio, Inc.
               <u>Adv. Proc. 21-50249 (KBO)</u>

Dear Counsel:

      This letter is the Court's ruling on *Plaintiff's Motion to Strike Defendant's Untimely Documents and for Reasonable Attorney's Fees* (the "<u>Motion to Strike</u>").[1] Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), the Trustee seeks to strike and prohibit Direct Results Radio, Inc. ("<u>Direct Results</u>") from referring to or offering into evidence at the upcoming November 9 trial the following: (1) an historical payment chart attached to Direct Results' pretrial brief as exhibit 7 (the "<u>First Payment Chart</u>"), (2) documents produced to the Trustee in October bates stamped DRR 001643-001754, which include two additional payment charts bates stamped DRR 00172-73 (the "<u>Second Payment Chart</u>") and DRR 001753-54 (the "<u>Third Payment Chart</u>" and, together with the First and Second Payment Charts, the "<u>Payment Charts</u>"); and (3) any other documents that were not produced in discovery that Direct Results may seek to introduce. The Trustee also requests that Direct Results pay his reasonable expenses, including attorney's fees, incurred in connection with the Motion to Strike.

---

[1] Adv. D.I. 45.

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 2

    As a preliminary matter, I believe it is more appropriate to consider the Payment Charts at trial. Contemporaneous with the Motion to Strike, the Trustee filed *Plaintiff's Motion in Limine to Exclude Defendant's Historical Payment Charts* (the "<u>Motion in Limine</u>")[2] to prohibit Direct Results from referring to or offering them into evidence at trial. The charts were prepared to support Direct Results' ordinary course of business defense and, in particular, the parties' historical payment practices. Because they are to summarize material Direct Results intends to admit into evidence at trial, I will determine whether they should be used or admitted then. Accordingly, this ruling addresses the other documents Direct Results tardily produced and any other document it has not yet produced but may seek to introduce at trial (the "<u>Untimely Documents</u>"). In light of the relevant facts and applicable case law, and having considered the briefing and arguments of the parties, I will strike the Untimely Documents and award reasonable expenses to the Trustee.

**I.    RELEVANT FACTS**

    On April 3, 2019, an involuntary chapter 7 petition for relief was filed with the Court against debtor Diversified Mercury Communications, LLC ("<u>DMC</u>"). Thereafter, the *Order for Relief in an Involuntary Case* was entered against DMC. On May 23, 2019, debtor DTR Advertising, Inc., an affiliate of DMC, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The debtors' chapter 7 cases have been jointly administered, and George L. Miller appointed as the chapter 7 trustee.

    In March 2021, the Trustee commenced the above-captioned adversary proceeding by filing a complaint against Direct Results, seeking, among other things, to avoid and recover an alleged preferential transfer of $493,349.34 pursuant to section 547(b).[3] Direct Results promptly answered, asserting several affirmative defenses, including the ordinary course of business defense under section 547(c)(2).[4]

    In late December 2021, during fact discovery, the Trustee requested that Direct Results produce: (1) prepetition communications between the debtors and Direct Results; (2) Direct Results' complete prepetition payment history with the debtors, including the date of each payment the debtor made to Direct Results and the invoice numbers, amounts, and dates that relate to each payment; (3) all invoices issued by Direct Results to the debtors; (4) all documents evidencing the invoices' sent dates; and (5) all documents evidencing the manner by which Direct Results sent its invoices to the debtors.[5] The time period relevant for production was four years prior to DMC's petition date.[6] Direct Results objected to this timeframe as overly burdensome.[7] After conferring, the parties agreed that a two-year period for the production request would be sufficient. Trustee

---

[2] Adv. D.I. 46.

[3] Adv. D.I. 1.

[4] Adv. D.I. 12.

[5] Adv. D.I. 48, Ex. A.

[6] *Id.*

[7] *Id.*, Ex. A (Requests for Production Nos. 5, 8, 9, 10, & 11).

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 3

contends that Direct Results then produced over 1,600 pages of bates stamped documents on January 31, 2022.[8] A day after the production, the Trustee requested that Direct Results produce certain invoices and communications he believed were missing.[9] Direct Results responded to the request by representing that it had produced all invoices and emails requested by the Trustee.[10]

During fact discovery, the Trustee also served Direct Results with requests for admission. He attached a chart (the "Admission Chart") and asked Direct Results to admit whether it was a "complete and accurate list of the payments received by Defendant to Debtors during the period covered by the Payment History."[11] Direct Results responded with an admission.[12] The historical period in the Trustee's Admission Chart began with a payment made to Direct Results on March 17, 2017, about two years prior to DMC's petition date.

On March 11, the deadline for fact discovery closed pursuant to the Court's amended scheduling order.[13] The parties then secured the November 9 trial date and obtained a pretrial order that required the submission in August and September of stipulated facts, a statement of disputed facts, and pretrial briefing.

On July 18, Direct Results alleges that it sent the First Payment Chart to the Trustee to include in the joint statement of facts. The chart included payments allegedly made to Direct Results as far back as May 9, 2016, beyond the originally agreed two-year payment period.[14] The Trustee declined to stipulate to the chart, so it was not included in the statement of facts. Email correspondence from August shows that the Trustee sought to clarify the historical period upon which Direct Results intended to rely given that its document production allegedly did not provide evidentiary support for invoices sent to the debtors before February 15, 2018.[15]

On September 19, Direct Results filed its pretrial brief with the First Payment Chart.[16] On September 30, the Trustee filed his reply brief and noted that neither the chart nor its supporting documents were produced during discovery.[17] Thereafter, on October 6, 7, and 10, Direct Results produced to the Trustee over 100 pages of new documents to supplement its January document

---

[8] At the hearing, the Trustee argued that some of the produced documents extended beyond the two-year period.

[9] Adv. D.I. 45, Ex. B.

[10] *Id.*

[11] Adv. D.I. 39, Ex. P-2 at 5 (Request for Admission No. 12).

[12] *Id.*

[13] Adv. D.I. 26.

[14] Adv. D.I. 48, Ex. 2.

[15] Adv. D.I. 45, Ex. 4 (explaining that Direct Results did not produce any emails showing when invoices were sent to the debtor prior to February 15, 2018).

[16] Adv. D.I. 40, Ex. 7.

[17] Adv. D.I. 41.

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 4

production to support the parties' historical payment practices.[18] Then, on October 10, Direct Results transmitted the Second Payment Chart.[19] The Second Payment Chart adds two columns to the First Payment Chart for due dates and invoice numbers.

On October 12, Direct Results emailed the Trustee an amended exhibit list for trial, which purportedly included two new exhibits that were neither produced to the Trustee during discovery nor included in Direct Results' supplemental productions.[20] These documents are bates stamped DRR 001744–54. One of these new exhibits is the Third Payment Chart. The Trustee provided a redline comparison between the Second Payment Chart and the Third Payment Chart, which shows that the Third Payment Chart modifies certain invoice dates and sent dates.[21]

Direct Results explains that the payment charts were modified as a result of a "verification process" that began in September and October after the Trustee raised issues regarding Direct Results' lack of production.[22] During this process, it verified the parties' historical payment data, edited the charts, and delivered the underlying documents (almost entirely invoices and emails) to the Trustee.[23]

## II. DISCUSSION

### A. Federal Rule 26(e) – Duty to Supplement

It appears undisputed that Direct Results produced the Untimely Documents as a supplement to its timely January 2022 production. Federal Rule 26(e) requires a party to supplement or correct any previous response to an interrogatory, request for production, or request for admission "in a timely manner" if the party learns that the previous disclosure is incomplete or incorrect in some material respect.[24]

The Trustee argues that producing the Untimely Documents seven months after the close of discovery, after the close of pretrial briefing, and just weeks before trial is not a "timely" supplement. Direct Results does not provide a satisfactory explanation or argument as to why it waited so long. Based on the timeline of events, Direct Results knew by at least July that it intended to rely upon a historical period beyond two years. Moreover, it admits that it has known the factual underpinnings of its defense, including the relevant historical data points, and intended

---

[18] Adv. D.I. 45, Exs. D, E, & F.

[19] *Id.*, Ex. F.

[20] *Id.*, Ex. G.

[21] *Id.*, Ex. H.

[22] Adv. D.I. 48 at ¶¶ 4-5; *see also* Adv. D.I. 54, Ex. 4 (August 5 email correspondence from Direct Results to the Trustee stating that "the trustee has chosen to force DDR to introduce exhibits and testimony on these matters").

[23] Adv. D.I. 48 at ¶¶ 4-5.

[24] FED. R. CIV. P. 26(e)(1); FED. R. BANKR. P. 7026.

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 5

to rely on them since the parties' initial communications.[25] It appears that the failure to timely produce the Untimely Documents was caused by a lack of attentiveness or preparation, which resulted in Direct Results verifying the parties' payment history and gathering supporting documents shortly prior to trial. This is not an acceptable excuse – it should have been done during fact discovery. Direct Results' attempt to cast the blame on the Trustee's demand for proof is inappropriate – it is Direct Results' burden to prove its own defense. Thus, the Court finds that Direct Results' supplemental production of the Untimely Documents was not in a timely manner under Rule 26(e).[26]

> B.     Federal Rule 37(c)(1) – Exclusion of Evidence

Next, the Court must determine whether the Untimely Documents should be excluded from trial. Federal Rule 37(c)(1) provides, in pertinent part, that:

> If a party fails to provide information required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*.[27]

The determination of whether to exclude evidence is within the Court's discretion.[28] To help determine whether the exclusion of evidence is appropriate, courts within the Third Circuit consider the *Pennypack* factors:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in

---

[25] Adv. D.I. 48 at ¶ 3 (explaining that it intended to rely upon the invoice sent date (not invoice date) in the parties' relationship).

[26] *See, e.g.*, *Bowman v. R.L. Young, Inc.*, No. 21-1071, 2022 WL 3998641, at **3-4 (E.D. La. Sept. 1, 2022) (holding that "in a timely manner" under Rule 26(e)(1) contemplates the discovery deadlines prescribed by a court order and finding that the plaintiff's supplemental production was not timely because he offered it three weeks after the close of discovery); *Hartford Fire Ins. Co. v. Sambrano (In re Sambrano)*, 440 B.R. 702, 706 (Bankr. W.D. Tex. 2010) (noting that even if the defendant's witness list was construed as supplemental disclosure, "such disclosure, after discovery has been closed for over a month, is untimely" under Rule 26(e)).

[27] Fed. R. Civ. P. 37(c)(1) (emphasis added); Fed. R. Bankr. P. 7037.

[28] *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546, 551 (D. Del. 2013); *cf. ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012) (noting that the "exclusion of critical evidence is an 'extreme' sanction, and thus, a district court's discretion is not unlimited.").

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 6

    failing to comply with the court's order"; and (5) the importance of
    the excluded evidence.[29]

  Factors 1, 2, and 3 weigh in favor of exclusion. The Untimely Documents are relevant to Direct Results' ordinary course of business defense for which it bears the burden of proof. If the Untimely Documents were timely produced, the Trustee would have had the opportunity to further consider, investigate, and prepare for the defense, including taking additional discovery to test the sufficiency and accuracy of the documents and submitting pretrial briefing addressing Direct Results' version of the parties' alleged historical payment practices. However, the Trustee can no longer do that without reopening discovery deadlines (that have long been closed), adjourning the trial, and supplementing the briefing. This will force the chapter 7 estate to bear additional costs and to delay its administration – an avoidable result in this relatively straightforward preference proceeding with sophisticated counsel. The Trustee has been prejudiced.

  Moreover, the Trustee has been wrongly surprised. Direct Results affirmatively represented during fact discovery that its production of invoices and emails was complete. It argues that the Trustee cannot have been surprised by the Untimely Documents because he has known since at least mid-July when Direct Results produced the First Payment Chart that it sought to rely upon an historical period beyond the two-year period. Direct Results also argues that the Trustee knew from early in their discussions what historical data points Direct Results believed relevant. However, the Trustee's knowledge of Direct Results' factual and legal arguments is not the same as expecting Direct Results to provide evidentiary support for them well beyond the fact discovery period, beyond pretrial briefing, and shortly prior to trial. It is reasonable to conclude that the Trustee was surprised when Direct Results produced the Untimely Documents - they should have been produced over ten months ago pursuant to the court-ordered schedule when the Trustee was assured by Direct Results that its production was complete[30] or when Direct Results decided to expand the historical period. For those reasons, the Court finds that factors 1, 2, and 3 weigh in favor of excluding the Untimely Documents.

  Factor 4 weighs in favor of exclusion. The Trustee does not claim that Direct Results has acted in bad faith, and I am not making such a finding at this time. However, as I have already concluded, Direct Results has not offered a satisfactory explanation for its delayed production.[31]

---

[29] *ZF Meritor,* 696 F.3d at 298 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–05 (3d Cir. 1977)).

[30] *See Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *5 (D. Del. Feb. 15. 2007) (noting that the plaintiff's knowledge of the prior art references does not excuse the defendant's failure to timely disclose them).

[31] *See REACT Env't Pro. Servs. Group, Inc. v. Buzan*, No. 2:20-cv-00533, 2021 WL 3604079, at *11 (E.D. Pa. Aug. 13, 2021) (citing *Mercedes Benz USA LLC v. Coast Auto. Grp., Ltd.*, No. 99-3121, 2008 WL 4378294, at *4 (D.N.J. Sept. 23, 2008) (noting that the plaintiff did not offer a reasonable explanation for its failure not to disclose damage calculations, suggesting bad faith or, at best, a willful decision).

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 7

"Even if there is no evidence of bad faith, where an oversight is not rationally explained and is surely prejudicial, exclusion is appropriate."[32]

      <u>Factor 5 weighs in favor of exclusion.</u>  The Third Circuit has noted that the importance of the evidence is the most significant *Pennypack* factor.[33]  Where, as here, a court is asked to wholly exclude evidence as a sanction for the failure to timely supplement discovery disclosures, the Third Circuit has cautioned: "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence."[34]

      Direct Results argues that the Untimely Documents are not critical to its defense because it intends to offer testimonial evidence in support of the parties' historical payment practices and the Third Payment Chart's data points.  Even assuming that this is possible in light of the fact that I am striking some of the documentary evidence of such practices and points that could and should have been produced, critical evidence may be still struck "in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered."[35]  Here, those circumstances exist.

      In conclusion, all of the *Pennypack* factors weigh in favor of excluding the Untimely Documents, and I find that Direct Results' failure to comply with Rule 26(e) was not substantially justified or harmless.  Thus, I will enter an order striking the Untimely Documents.  Direct Results may not offer or refer to them at trial.

    **C.**       **Federal Rule 37(c)(1)(A) – Monetary Sanctions**

      Federal Rule 37(c)(1) provides that, in addition to excluding evidence, the Court "on motion and after giving an opportunity to be heard may order payment of the reasonable expenses, including attorney's fees, caused by the failure" to comply with Rule 26(e).[36]  Sanctions under Rule 37(c)(1) are appropriate "where a party that without *substantial justification* fails to disclose information required by certain enumerated subsections of Rule 26."[37]  For the reasons already detailed, I do not believe Direct Results has justified its failure to timely produce the documents at issue.  For that reason, I find it appropriate for Direct Results to pay the Trustee's reasonable expenses, including attorney's fees, incurred in connection with the Motion to Strike.

---

[32] *Aetna Inc. v. Mednax, Inc.*, No. 18-2217, 2021 WL 949454, at *5 (E.D. Pa. Mar. 12, 2021) (quoting *Mercedes*, No. 99-3121, 2008 WL 4378294, at *4).

[33] *ZF Meritor*, 696 F.3d at 298.

[34] *Konstantopoulous v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Pennypack,* 559 F.2d at 905).

[35] *Bridgestone*, No. 05-132, 2007 WL 521894, at *4.

[36] Fed. R. Civ. P. 37(c)(1)(A).

[37] *Grider v. Keystone Health Plan Central, Inc.,* 580 F.3d 119, 141 (3d Cir. 2009).

David W. Carickhoff, Esq., *et al.*
October 31, 2022
Page 8

### III.   CONCLUSION

For the reasons just detailed, I will grant the Motion to Strike in part, deny it in part, and defer a ruling on the Motion in Limine until trial.  An appropriate order will issue.

Very truly yours,

_____
Karen B. Owens
United States Bankruptcy Judge